**SULAIMAN LAW GROUP, LTD.**
Bobby C. Walker, Esq. (State Bar No. 321788)
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
Facsimile: (630) 575-8188
Email: bwalker@sulaimanlaw.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE N. HEITMEYER f/k/a JAMIE N. BACA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CREDIT-CREDIT REPAIR CENTERS,<br><br>Defendant. | Case No. 2:23-cv-02303<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.; and**<br><br>**2. VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT OF 1984, CAL. CIV. CODE §1789.10 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

NOW comes JAMIE N. HEITMEYER f/k/a JAMIE N. BACA ("Plaintiff"), by and through the undersigned, complaining as to the conduct of AMERICAN CREDIT-CREDIT REPAIR CENTERS ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* and the California

Credit Services Organizations Act of 1984 ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq.,* stemming from Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within, conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Central District of California.

## PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), residing in Santa Monica, California, which lies within the Central District of California.

5. Defendant is a credit repair organization that holds itself out as providing consumers the ability to improve their credit by as much as 100 points through its services. Defendant is corporation organized under the laws of the state of California whose principal place of business is located at 12237 Wilshire Boulevard, Los Angeles, California.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In approximately July of 2020, Plaintiff was wanting to go cleaning up and improving her credit, and began looking into various credit repair companies for assistance.

9. Plaintiff was referred to Defendant by her former bankruptcy counsel, who informed Plaintiff that Defendant would be able to get negative information, including her bankruptcy, removed from her credit report.

10. Plaintiff subsequently spoke with Defendant.

11. Defendant confirmed the representations made by Plaintiff's bankruptcy counsel and further advised that its services would result in Plaintiff having the desired information removed from her credit, regardless of the accuracy of the information Plaintiff wanted removed.

12. Defendant advised that its services would include disputing the negative information Plaintiff wanted removed through the various credit bureaus, and that its services would result in the debts being removed.

13. Plaintiff subsequently entered into a contract with Defendant for the provision of services on or about July 20, 2020.

14. Defendant's contract represented that Plaintiff had to use Defendant's services for at least 6 months and could not cancel prior to making at least 6 months of payments.

15. Defendant further represented that its services would cost $165 per month.

16. On the same day Plaintiff signed the contract, Defendant charged Plaintiff a $165 upfront fee prior to performing any work for Plaintiff.

17. Defendant's contract further fraudulently and deceptively represents that it is a non-profit corporation; however, Defendant does not show up in the IRS 501c(3) database, and is incorporated under the laws of the state of California as a general stock corporation.

18. Plaintiff made payments to Defendant for months; however, Plaintiff failed to see any benefit or have the results delivered that Defendant represented would be provided.

19. Defendant only got various minor items removed or corrected from Plaintiff's credit report, far less than what it represented would be achieved at the time Plaintiff signed up for Defendant's services.

20. Defendant failed to get the bankruptcy information removed from Plaintiff's credit history, as that information could not be removed merely through Defendant's disputes given how recently Plaintiff had filed for bankruptcy.

21. Upon information and belief, Defendant represented that items would be removed from Plaintiff's credit report, including the bankruptcy, without any concern

for whether those items were inaccurate or could reasonably be removed, and subsequently attempted to shield itself from these representations through contractual language contradicting its oral representations.

22. Frustrated with Defendant's services, Plaintiff wanted to stop, but was subsequently convinced to re-enroll in Defendant's program at a reduced rate.

23. In approximately July of 2021, Plaintiff was offered a discounted re-enrollment rate by Defendant, at which point Defendant again represented it would be able to achieve the results and services it failed to perform the first time.

24. Plaintiff wanted the negative information removed and to have her credit improved as represented by Defendant, and believing Defendant would able to deliver the results it represented, executed another contract with Defendant on or about July 2, 2021, which was substantially the same as the one executed in July of 2020.

25. Plaintiff was charged a $99 upfront fee prior to Defendant performing any work for Plaintiff, and subsequently began making her monthly payments of $70.20 to Defendant.

26. Throughout the life of the parties' dealings, Plaintiff asked for information and documents that Defendant was submitting to the credit reporting agencies on her behalf; however, Defendant could not and/or would not provide any information to Plaintiff about what steps it was taking to remove the information from her credit report.

27. In total, Plaintiff paid Defendant over $1,300.00 for services and results that Defendant failed to perform and deliver in the manner it represented its services would be provided.

28. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

29. Plaintiff has suffered significant harm as a result of Defendant's conduct, including but not limited to emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, paying for nonexistent and deficient credit repair services, denial of the benefit of her bargain in her dealings with Defendant, and numerous violations of her state and federally protected interests to be free from abusive and deceptive practices by purported credit repair organizations.

**COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

30. Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

32. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any

consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)(3)-(4)

33. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

34. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant guaranteed that it could remove the negative items Plaintiff wanted removed from her credit report, including her bankruptcy. However, Defendant's representations were clearly false, both given the nature of the information it sought to remove, as well as the fact that it failed to achieve any of the represented results. Upon information and belief, Defendant's business model is predicated upon promising consumers everything possible in order to get them to agree to use Defendant's services and subsequently collect an upfront fee and significant monthly payments, despite Defendant knowing that it cannot provide the services as represented.

35. Defendant further violated the above provisions of the CROA through the deceptive representations regarding the improvement consumers could experience through its services. Defendant represents that consumers can expect significant increase in their credit scores through its services, and made similar representations to Plaintiff. However, Defendant failed to deliver the improvement it represented would be provided to Plaintiff.

36. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive conduct in getting Plaintiff to re-enroll in Defendant's services at a reduced rate after failing to deliver the represented results in connection with the first contract executed between the parties. Defendant deceptively suggested and represented that the results it was supposed to have originally provided would be achieved if Plaintiff agreed to continue making payments at a reduced rate in order to keep Plaintiff on the hook, yet subsequently failed to perform the services or deliver the results in the manner represented.

37. Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of credit disputes on Plaintiff's behalf. However, pursuant to 12 C.F.R. § 1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

38. Defendant further violated the above provisions of the CROA through its fraudulent representations that it is a non-profit entity. Upon information and belief, Defendant is a for-profit stock corporation organized under the laws of California and is not considered tax-exempt organization by the IRS. Defendant falsely represents its non-profit status so as to falsely hold itself out to Plaintiff and consumers as not working for a profit, when in fact its entire business is designed to bilk vulnerable consumers for payments in furtherance of its own bottom line.

39. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive conduct in contradicting its representations through contractual language. Upon information and belief, Defendant routinely represents its services and results that can be delivered in a certain way when convincing consumers to sign up for services, only to cut against and contradict those representations through contractual language. Specifically, Defendant represents that any information will be removed, regardless of its accuracy, including bankruptcy information, and further guarantees that even accurate and properly reporting information can be removed. However, in its contracts with consumers, Defendant cuts against these representations through contractual language.

**b. Violation of CROA § 1679b(b)**

40. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for

9

the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

41. Defendant violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Plaintiff paid Defendant upfront costs before Defendant provided any services to Plaintiff. Defendant further retained Plaintiff's payments for services it ultimately failed to completely perform.

### c. Violation of CROA § 1679d

42. The CROA, pursuant to 15 U.S.C. § 1679d(a) provides that "no services can be provided by any credit organization for any consumer" until a contract that complies with § 1679d(b) has been signed, or before the end of the 3-business day period beginning on the date the contract is signed. Pursuant to § 1679d(b), credit repair organizations are required to include, in their contracts with consumers, a *conspicuous* disclosure of consumer's right to cancel a contract "in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right'."

43. Defendant violated § 1679d through its contractual failures and the manner in which it purportedly provided services to Plaintiff. Defendant purportedly

10

performed services for Plaintiff without having Plaintiff sign a compliant contract, and charged Plaintiff immediately for services before the expiration of the 3 business day period after Plaintiff signed the contracts. Defendant further violated the CROA by failing to include the requisite disclosure regarding Plaintiff's right to cancel the agreement with Defendant.

### d. Violation of CROA §§ 1679f(a)-(b)

44. The CROA, pursuant to 15 U.S.C. §§ 1679f(a)-(b), provides that any waiver, or attempt to attain a waiver, by a consumer of any protection provided or any right of the consumer under the CROA results in that contract being considered void and unenforceable – further making the attempt to attain a waiver of any right or protection under the CROA a separate violation of the CROA.

45. Defendant violated § 1679f through its attempt to attain Plaintiff's waiver of rights afforded her under the CROA. Defendant attempted to justify its premature and unlawful billing practices by acquiring Plaintiff's assent to the payment schedule, despite the nature of Defendant's billing practices being in direct violation of federal law and the protections provided by the CROA.

WHEREFORE, Plaintiff, JAMIE N. HEITMEYER f/k/a JAMIE N. BACA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT

46. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

48. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

   **a. Violation of CCSOA § 1789.13**

49. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

50. Pursuant to § 1789.13(a), a credit services organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

51. Defendant violated § 1789.13(a) when it charged and received money from Plaintiff without fully completing the services it agreed to perform. As alluded to

*supra.,* Defendant improperly charged Plaintiff on an upfront basis prior to performing any work for Plaintiff, and persisted

52. Pursuant to § 1789.13(b), a credit services organization cannot "fail to perform the agreed services within six months following the date the buyer signs the contract for those services."

53. Defendant violated § 1789.13(b) by failing to perform its services within 6 months of Plaintiff signing the contract with Defendant. Under both agreements Plaintiff signed, Defendant failed to perform its services and deliver the results within 6 months of Plaintiff signing up for those services.

54. Pursuant to § 1789.13(c), credit services organizations cannot "fail to provide a monthly statement to the consumer detailing the services performed."

55. Defendant violated § 1789.13(c) by failing to provide a monthly statement of the services it was performing for Plaintiff. Defendant failed to provide any such monthly statements, and when Plaintiff explicitly requested information from Defendant on what it was doing in exchange for Plaintiff's monthly payments, Defendant refused to provide that information to Plaintiff.

56. Pursuant to § 1789.13(h), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(i), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of

business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

57. As outlined above, Defendant violated the above referenced provisions of the CCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

58. Pursuant to § 1789.13(u), a credit services organization cannot "fail to make a written communication sent on behalf of a consumer to any credit reporting agency, data furnisher, or legal counsel for either of the foregoing available to the consumer."

59. Defendant violated the above reference provision of the CCSOA through its failure to make available to Plaintiff, upon her explicit request, the written communications it purportedly submitted to the credit reporting agencies on Plaintiff's behalf.

**b. Violations of CCSOA § 1789.16(a)**

60. The CCSOA requires credit services organizations to include a conspicuous statement regarding a consumer's right to cancel a contract in proximity to the place reserved for the consumer's signature, providing 5 days for cancelation. *See* Cal. Civ. Code § 1789.16(a)(1).

61. Defendant violated § 1789.16(a)(1) by failing to provide the requisite disclosure of Plaintiff's right to cancel in immediate proximity to the space reserved for her signature on the contract.

**c. Violations of CCOSA § 1789.19**

62. The CCSOA, much like the CROA, provides that a credit services organization's attempt to obtain a waiver of any of the rights afforded constitutes a violation of the CCSOA. *See* Cal. Civ. Code § 1789.19(a).

63. Defendant violated § 1789.19(a) through its unlawful attempt to obtain a waiver of Plaintiff's protections provide under state and federal law.

WHEREFORE, Plaintiff, JAMIE N. HEITMEYER f/k/a JAMIE N. BACA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: March 29, 2023                    Respectfully submitted,

/s/Bobby C. Walker
Bobby C. Walker, Esq.
California Bar No. 321788
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
bwalker@sulaimanlaw.com